John SHIPLEY and Rochelle
D. Shipley, Defendants
Below–Appellant,

v.

NEW CASTLE COUNTY, a municipal
corporation of the State of Delaware,
Plaintiff Below–Appellee.

No. 568, 2008.

Supreme Court of Delaware.

Submitted: April 7, 2009.
Decided: June 15, 2009.

John R. Weaver, Jr., Esquire of Wilmington, DE, for appellants.

Harshal Purohit–Patel, Esquire, of New Castle County Law Department, New Castle, DE, for appellee New Castle County.

Brian T. Murray, Esquire of Newark, DE, for Carello Development, LLC.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

RIDGELY, Justice:

Defendants–Appellants John Shipley and Rochelle D. Shipley appeal the Superior Court's denial of their motion to set aside a sheriff's sale of real estate pursuant to Superior Court Civil Rule 60(b). The Shipleys raise three arguments on appeal. First, they argue that the court erred as a matter of law because the Sheriff's sale bill improperly described the property to be sold. Second, they argue that the court erred as a matter of fact in finding that the Shipleys had not paid their property tax bills in full. Third, they argue that the court erred as a matter of law in finding that their motion was untimely. We find no merit to these arguments and affirm.

## I. Facts and Procedural History

The Shipleys purchased 609 Wildel Avenue—known by its New Castle County (the "County") parcel number: 10–010.30–052—by deed dated July 19, 1978. As a result of several years of repeated complaints to the County Office of Code Enforcement (the "OCE"), the Shipleys were notified by certified and first-class mail as well as a posting on the property that 609 Wildel Avenue was and remained in violation of the New Castle Property Maintenance Code (the "Code").

The Shipleys failed to bring their property in compliance with the Code and criminal charges were filed against them in January of 2007 relating to the various infractions. Their cases were scheduled to be heard in the Justice of the Peace Court in May 2007.[1] Over the course of the next five months, the OCE sent the Shipleys three "abatement letters," indicating that if the property was not brought into compliance, the County would abate the violations pursuant to Title 9, section 2907.[2] The violations were

---

1. The Shipleys did not appear at the scheduled hearing and capiases were issued. They also failed to appear at their rescheduled hearings in September 2007.

2. The letters also indicated that the Shipleys could request a rule to show cause hearing. *See* 9 *Del. C.* § 2907. The statute provides:

(a) If after due notice, either actual or constructive, is given by the Department of Land Use to the person responsible for the property, and where such person has had the opportunity to be heard by an administrative tribunal or a court of competent jurisdiction, such person fails to comply with the notice or order and the illegal action or condition continues to exist, the

not remedied and, in June 2007, the County abated the violations, incurring $3,998.40 in expenses. As provided by Section 2907(b), these expenses became a tax lien on the Shipleys' property, which was recorded and subject to collection in the same manner as other County real estate taxes. Thus, if the lien was not satisfied, the property could be sold at a sheriff's sale. After repeated notices to the Shipleys demanding payment of the expenses incurred were ignored, the County filed a monition in Superior Court on October 5, 2007. The monition accurately described the Shipleys property by address, parcel number, and lot size, and described the amount owed as "ABATEMENT COSTS/TAXES."

The monition was issued on October 11, 2007 and posted on the property one week later. The Shipleys' property was originally scheduled to be sold at a sheriff's sale on January 8, 2008; however Rochelle Shipley filed an emergency motion to stay on January 3, alleging that the County did not have authority to proceed. Mrs. Shipley did not raise any concerns regarding the property description at that hearing. On January 18, the Superior Court denied the motion. John Shipley filed two motions for reconsideration of the court's January 18 order, neither of which addressed any concern regarding the property description.

On April 18, 2008, the County filed with Prothonotary a request that a writ of venditioni exponas monition be issued to the Sheriff of New Castle County, claiming that $3,998.40 was due. Page two of the writ accurately described the Shipleys property by address, parcel number, and lot size. However, attached to the praecipe was a description of the property to be sold, describing the property by parcel number and metes and bounds. Both of these descriptions included incorrect information: the parcel number listed was 10–020.30–052—which referenced a parcel located two miles away—and the metes and bounds description indicated a smaller parcel within the Shipleys' property. However, the parcel for sale was correctly described as "BEING THE SAME PREMISES which Clarence Frederick Wilson and Mabel Gertrude Wilson ... did grant and convey unto John S. and Rochelle D. Shipley in fee"; and "ALL THAT CERTAIN LOT, piece or parcel of land with any buildings or improvements thereon erected, known as 609 Wildel Avenue, New Castle County, State of Delaware." In addition, the directions attached to the list of properties being sold at the June 10, 2008 Sheriff's sale cautioned bidders that they "MUST RESEARCH THE PROPERTY AT THE RECORDER OF DEEDS OFFICE...."

Department of Land Use may cause such violation to be removed, corrected, abated or otherwise made safe and sanitary. The Department of Land Use ... may incur any expense necessary or incidental to abating violations of the New Castle Property Maintenance Code or other provisions of the New Castle County Code that constitute a threat to the public health, safety or welfare and to provide for the sanitary condition, safety and security of the property, structure or building.
(b) All expenses incurred by the Department of Land Use pursuant to this section and all fines and penalties associated with violations of New Castle Property Maintenance Code shall be a tax lien on the parcel of real property that the expense is uncured upon or which is the subject of the notice or order. Upon certification of a tax lien by the Department of Land Use, the amount of such lien shall be recorded and collected in the same manner as other county real estate taxes, and paid to New Castle County, when collected.
(c) New Castle County may also maintain a civil action for the recovery thereof against such person responsible.
9 *Del. C.* § 2907; *see also* 75 Del. Laws c. 212 § 6 (July 15, 2005).

The Shipleys' property was scheduled to be sold at a sheriff's sale on June 10, 2008. On June 6, the Shipleys filed an emergency motion to stay the sale, which was denied the same day by the Superior Court. The property was sold on June 10 for $71,000 and the purchaser assigned his bid to Carello Development, LLC ("Carello"). Carello then requested a Sheriff's deed, describing 609 Wildel Avenue in its entirety and by its correct parcel number. The Sheriff executed the deed as requested.

Following the sale, the Shipleys filed numerous motions and/or letters requesting that the court overturn or reopen its ruling. Each of these were denied. On October 15, 2008, over four months after their property was sold and one month after the redemption period, the Shipleys filed a motion to set aside the sheriff's sale of their property. In this motion, the Shipleys for the first time raised a concern regarding the description of the property in the writ; however they made no mention of error in the parcel number.

The Superior Court denied the motion on October 27, 2008, finding that it was untimely and failed to present any evidence that the Shipleys did not have notice of the sale, had been denied due process, or had suffered fundamental unfairness. The court also noted that there was no evidence that the erroneous description

had suppressed bidding on the property. This appeal followed.

## II. Discussion

■ The Superior Court has broad discretion to confirm or set aside sheriff's sales.[3] Accordingly, we review such decisions for abuse of discretion.[4] We will accept the facts as determined by the trial court unless they are "clearly wrong."[5] To the extent that the Shipleys' present arguments not raised in the Superior Court, those arguments are waived.[6]

Under Superior Court Civil Rule 60(b)(6), a final order may be set aside for "any other reason justifying relief from the operation of the judgment."[7] Relief under Rule 60(b)(6) is an extraordinary remedy which requires a showing of "extraordinary circumstances."[8] The Superior Court's decision whether to reopen a final judgment is a matter within the sound discretion of the trial judge.[9]

A. *The Superior Court did not abuse its discretion in denying the motion to set aside the sheriff's sale because of the description of the property.*

The Shipleys contend that the Superior Court erred in denying their motion because the sheriff's sale bill contained the wrong description and parcel number for their property. They assert that these errors caused confusion and, as a result,

**3.** *Burge v. Fidelity Bond & Mortgage Co.*, 648 A.2d 414, 420 (Del.1994).

**4.** *Deibler v. Atlantic Properties Group, Inc.*, 652 A.2d 553, 558 (Del.1995); *see also Fitzsimmons v. New Castle County*, 827 A.2d 30 (Del.2003)

**5.** *McNeil v. McNeil*, 798 A.2d 503, 508–08 (Del.2002).

**6.** SUPR. CT. R. 8.

**7.** SUPER. CT. CIV. R. 60(b).

**8.** *Jewell v. Div. of Soc. Servs.*, 401 A.2d 88 (Del.1979) (adopting the standard for granting a motion under Federal Rule of Civil Procedure 60(b)); *see also Dixon v. Del. Olds, Inc.*, 405 A.2d 117, 119 (Del.1979). *See generally Klapprott v. U.S.*, 335 U.S. 601, 615, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (explaining federal standard for granting Rule 60(b) motions).

**9.** *Cf. Hoffman v. Hoffman*, 616 A.2d 294, 297 (Del.1992) (citing *Wife B v. Husband B*, 395 A.2d 358, 359 (Del.1978)).

did not "promote bidding" on the property at the sheriff's sale. In response, the County and Carello contend that the Shipleys did not raise the issue of the erroneous parcel number at the Superior Court level and, in fact, stated that there was "no doubt" that the parcel number specified on the sheriff's notice covered the entire property. In addition, although they concede that the sheriff's sale bill did not contain a full description of the property, they contend that the Shipleys have failed to set forth any facts which demonstrate that this "minor clerical error" violated their due process rights.

■ The purpose of the notice of sale and the advertising is to apprise the public and potential bidders of the sale and promote bidding.[10] In the past, Delaware courts have set aside sheriff's sales for errors made in advertising the property for sale. For example, in *Smith v. Wright*,[11] this Court set aside the sale of goods which were not permitted to be viewed at the sheriff's sale. Similarly, in *City of Dover v. Hunter*,[12] the Superior Court set aside a sheriff's sale when the parcel number used to advertise the property for sale was off by one number. However, that error caused the City to apply the taxes paid by the owner to the incorrect parcel number, which, in turn, precipitated the sheriff's sale and excused the owner's failure to object to the sale

prior to confirmation.[13] Moreover, the court found that, while the high bid at the sale was only $2,450, the property was worth at least $160,000 and the first mortgage holders' debt exceeded $218,000; thus, the court found that maintaining the "status quo" would result in a "windfall" to the third-party purchaser.[14] After considering the owner's "excusable neglect" and the other "extraordinary circumstances" of the case, the court granted the owner's Rule 60(b) motion to set aside the sale.[15]

The Shipleys also contend that in *In re Downham Co.*,[16] the Superior Court set aside a sale for failure to advertise improvements on the property. However, there is no mention of this rationale in the opinion; rather, the court's decision rested on the fact that it determine that the sale price was grossly inadequate.[17] In that case, the court determined that the property was sold for much less than one-half of its value, which was sufficient to "shock the sense of the Court."[18]

■ Even assuming, *arguendo*, that the parcel number issue has not been waived in this case, the Shipleys' argument that the Superior Court abused its discretion by not setting aside the sale lacks merit. Although it is undisputed that the sheriff's sale bill contains both the incorrect parcel number and the inadequate metes and bounds description, the errors in this case

10. *See In re Adair*, 190 A. 105, 108 (Del.Super.Ct.1936); *In re Seaford Hardware Co.*, 132 A. 737, 738 (Del.Super.Ct.1926).

11. 1 Del. Cas. 134 (Del.1799)

12. 880 A.2d 239, 243 (Del.Super.Ct.2004)

13. *Id.* at 246.

14. *Id.* at 242–43, 246.

15. *Id.* at 246.

16. 165 A. 152 (Del.Super.1932)

17. 165 A. at 153 ("When the cost of the property involved in this case, together with its good condition, fine location, and present value as proved, and the price for which it was sold are all considered, there does seem to be inadequacy of the price sufficiently grate to shock the sense of the Court."). The Shipleys assert that the sale in that case was set aside for failure to advertise improvements on the property. There is no mention of this basis in the decision. *Id.*

18. *Id.*

did not create the "extraordinary circumstances" that were present in *Hunter.* It is undisputed that the bill contained the proper address and stated that it was the same parcel conveyed to the Shipleys by deed dated July 19, 1978. Therefore, a review of the sheriff's sale bill would have led a potential bidder, after sufficient research, to believe that the entire parcel at 609 Wildel Avenue was for sale. In fact, Carello understood the entire parcel was for sale and requested a sheriff's deed with the correct parcel number and the full description of 609 Wildel Avenue.

Moreover, the Shipleys presented no evidence to the Superior Court indicating that bidding was chilled as a result of the erroneous description or that the sale price is otherwise grossly inadequate. Unlike either *Hunter* or *Downham*, there was no evidence that the sale price was grossly inadequate. To the contrary, the court expressly found that the sale had "spirited bidding" and $71,000 was a "substantial bid." On the facts of this case, the Superior Court did not abuse its discretion in denying the Shipleys' motion to set aside the sale.

B. *The Superior Court was not clearly wrong in finding that the Shipleys did not pay their "taxes."*

The Shipleys contend that the Superior Court erred in finding that the Shipleys failed to pay their property taxes for the years 2006 and 2007, which were the subject of the monition. They assert that the County's records indicate that the 2006 property taxes for 609 Wildel Avenue were paid by July 23, 2007—before the monition was filed—and that the 2007 taxes were paid on February 14, 2008—after the mo-

nition was filed, but before the sheriff's sale.

■ This argument stems from a basic confusion on the part of the Shipleys as to the nature of the lien upon their property. The $3,998.40 debt that precipitated the sheriff's sale represented the expenses incurred by the County in abating the Code violations on the property. Pursuant to Section 2907, the Shipleys were required to reimburse the County for these expenses and the debt was recorded against the property as a tax lien. When the assessments were not paid they were subject to collection through the monition process in the same manner as taxes.[19] The court, in referencing this debt in its decision, used the term "taxes"; however it is clear that the intended reference was to the outstanding lien on the property for the unpaid assessments.

C. *The Superior Court did not err in finding that the Shipleys motion under Rule 60(b) was "untimely."*

■ The Shipleys contend that the Superior Court erred in denying their motion, in part, because it was untimely. They assert that a motion under Rule 60 has "no limit of time." This argument ignores the effect of confirmation of a sheriff's sale by the Superior Court.

> When land is sold under a vend. exp. or other appropriate execution process and there are no objections made to the sale, the sale is confirmed at the return term of the writ, as a matter of course, without any act or decree of the court; and a sale so confirmed is final in its character and effect, and cannot afterwards be inquired into, nor can its validity be controverted collaterally. By the rules of the court, applications to set aside sheriffs' sales must be made on or be-

---

19. *See* 9 *Del. C.* § 2907(b); *cf. City of Wilmington v. McDermott,* 2008 WL 4147580, at *2 (Del.Super.Ct. Aug. 26, 2008) (awaiting appeal) (holding that vacant building fees are "special assessments" which may be collected through the monition process).

fore the first Thursday of the term to which the writs are returned, and all sales not objected to on or before the first Thursday, are on the first Friday, confirmed as a matter of course.[20]

In *Deibler v. Atlantic Properties Group, Inc.*,[21] we observed that, although the timing of confirmation has been modified, Judge Woolley's statement regarding the effect of confirmation continues to be good law. It has long been recognized that objections to a sheriff's sale are waived as untimely if not asserted prior to confirmation.[22]

However, this rule is not absolute. Because a sheriff's sale is a judicial process, the Superior Court has broad power to control such sales to correct abuses or protect parties from injustice.[23] This discretionary power may be exercised even after the sale is confirmed through a Rule 60(b) motion for relief from final judgment.[24] Although there is no set time limit in which a party must file a Rule 60(b) motion, the movant must exercise diligence and act without unreasonable delay.[25] Because of the strong public interest in the finality of sheriff's sales, a presumption of unreasonable delay and lack of diligence arises after the sale is confirmed by the court. As we observed in *Deibler*, subsequent objections are untimely *"unless* the court finds lack of notice or other basis to relieve the party of the consequences of unexcused delay."[26] Thus,

**20.** 2 Victor B. Woolley, Practice in Civil Actions in Delaware § 1107 (1906). Reflecting the abolition of terms of court, current practice requires that the sheriff's return of sale be made "on the first Monday of the month succeeding the date of the sale and applications to set aside such sales shall be made on or before the first Thursday succeeding such return date, and all such sales no objected to on or before the first Thursday, shall on the first Friday, be confirmed as a matter of course." Super. Ct. Civ. R. 69(d).

**21.** 652 A.2d 553, 556 (Del.1995); *accord Hunter*, 880 A.2d at 245.

**22.** *See Swiggett v. Kollock*, 3 Houst. 326, 1866 WL 949, at *2, *3 (Del.Super.Ct.1866) ("It was now too late to object to the description, or to the validity of the sheriff's sale of the tract in question.... For any irregularity or defect of the kind he had alluded to, could only be taken advantage of by any party prejudiced or affected by it, at the furthest, by the second term of the court after the return of the inquisition, or on the return of the sale by the sheriff and before the confirmation of it by the court." "Now as to the first ground of objection, we say to you that the objection comes too late.").

**23.** *Burge v. Fidelity Bond & Mortgage Co.*, 648 A.2d 414, 420 (Del.1994). *See generally* 2 Woolley, *supra*, § 1108 (1906) ("Where there has been mistake, misconduct or fraud in the course of the sale, whereby any of the parties to or interested in the proceeding are prejudiced, it may be corrected by an application on the part of the party aggrieved to set the sale aside. The power of the court in this respect is broad and discretionary....").

**24.** *See Robins v. Garvine*, 136 A.2d 549, 552 (Del.1957) (on appeal from a collateral attack on the sale in the Court of Chancery, we indicated that, if established to the satisfaction of the Superior Court, the following facts would form a basis for relief under Rule 60(b): appellant had no personal knowledge that her property was being sold by order of the court for non-payment of taxes; the disparity of the purchase price ($200) and the market value ($5000) was so great as to shock the conscience of the court; if timely objection to the sale had been made, the court could, and probably would, have refused to confirm the sale; when appellant actually learned that her property had been sold for non-payment of taxes, she acted promptly).

**25.** *See Schremp v. Marvel*, 405 A.2d 119, 120 (Del.1979); *Nashold v. Giles & Ransome, Inc.*, 245 A.2d 175, 176 (Del.1968), *Ramirez v. Rackley*, 70 A.2d 18, 21–22 (Del.Super.Ct.1949).

**26.** *Deibler*, 652 A.2d at 556; *accord Hunter*, 880 A.2d at 245; *Swiggett*, 1866 WL 949, at *2–3.

barring such a finding, a Rule 60(b) motion to set aside a sheriff's sale after confirmation is untimely.[27]

In *City of Dover v. Hunter*,[28] the Superior Court set aside a Sheriff's sale on a motion under Rule 60(b) after confirmation and the redemption period. In that case, confusion caused by the city and county tax parcel numbering system resulted in the movant's annual property taxes being assigned to the incorrect property and the city commencing a monition tax sale proceeding against the movant's property.[29] Although the movant did not remedy the problem prior to the sale to a third party and failed to object to confirmation or redeem the property afterward, the court noted evidence that the movant believed the problem created by the mix-up in parcel tax numbers had been remedied, eliminating the need to object to the sale.[30] Accordingly, the court found "excusable neglect" on the part of the movant in not coming forward before confirmation, which formed a basis for granting the motion under Rule 60(b)(1).[31]

In addition, the court found that the sale price was grossly inadequate ($2,450 for a property worth in excess of $160,000) and would result in a windfall to the third-party purchaser, who set forth no evidence of irreparable injury if the sale was set aside. Taken in conjunction with the movant's excusable neglect, the court found these facts constituted "extraordinary circumstances" which formed a basis for granting the motion under Rule 60(b)(6).[32]

Here, the property was sold at the sheriff's sale on June 10, 2008. No objections were filed and confirmation occurred July 11, 2008. Following confirmation, the Shipleys had sixty days to pay the debt and redeem the property.[33] The Shipleys' Rule 60(b) motion to set aside the sale was not filed until October 16, 2008, thirty-seven days after the expiration of the redemption period, ninety-seven days after the expiration of the confirmation period, and one hundred and twenty-eight days after the sheriff's sale. During this period, the Shipleys filed numerous documents asking that the sale be set aside without raising the issue of the inaccurate descriptions, despite the fact that the same metes and bounds description had been used since October 5, 2007. In its decision, the Superior Court noted that it was denying the motion because there was no defect and the motion was untimely. Because the Shipleys' motion alleged neither excusable neglect nor any other basis to relieve them of the consequences of unexcused

---

27. *See Dep't of Fin. v. LaRosa Corp.*, 2003 WL 23274836 (Del.Super.Ct. Dec. 17, 2003) (finding that movant, who failed to object to a tax sale before confirmation and before the sixty-day statutory redemption period expired, was not entitled to have the sale set aside by way of a Rule 60(b) motion).

28. 880 A.2d 239. However, even so, the court required that the movant pay the redemption price to the high bidder, in addition to paying any expenses the high bidder incurred. *Id.* at 247.

29. *Id.* at 241–43.

30. *Id.* at 246.

31. *Id.*; *see also* SUPER. CT. CIV. R. 60(b)(1) ("On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... Mistake, inadvertence, surprise, or excusable neglect.").

32. *Id.* at 246; *see also* SUPER. CT. CIV. R. 60(b)(6) ("On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... any other reasons justifying relief from the operation of the judgment.").

33. *9 Del. C.* § 8729.

delay, their objection was untimely. The Superior Court did not abuse its discretion in denying the Shipleys' motion for relief under Rule 60(b).

### III. Conclusion

The judgment of the Superior Court is **AFFIRMED.**