## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

POLARIS ACCEPTANCE,                )
                                   )
    Plaintiff,            )
                                   )
                                   )
       v.            )      C.A. N23C-10-053 JRJ
                                   )
FAIN AUTO SALES, LLC,              )
IMC OF DELAWARE, LLC               )
and MARK W. LILLARD,               )
                                   )
    Defendants.           )

Date Submitted:  February 6, 2024
Date Decided:  March 21, 2024

## MEMORANDUM OPINION

*Upon Defendants' Motion for Relief from Replevin under Rule 60(b)*
**DENIED**

*Upon Defendants' Motion for an Order Holding Plaintiff in Contempt*
**DENIED**

Justin M. Forcier, Esq., Reed Smith, LLP, 1201 N. Market Street, Suite 1500, Wilmington, DE 19801.  Attorney for Plaintiff.

Anthony Delcollo, Esq., Christopher M. Coggins, Esq., Michael DeSantis, Esq., Offit Kurman, P.A., 222 Delaware Ave, Suite 1105, Wilmington, DE 19801. Attorneys for Defendants.

**Jurden, P.J.**

# I.     INTRODUCTION

Defendants move for relief from a replevin order, and the entry of a contempt order, against the Plaintiff who sought replevin. Defendants Fain Auto Sales, LLC ("Fain"), IMC of Delaware, LLC ("IMC"), and Mark Lillard ("Lillard") (collectively "Defendants"), claim that Polaris Acceptance ("Polaris") improperly used a stipulated replevin order to remove property from Fain and IMC's dealership lots beyond what was specified in the order.  Polaris argues it acted in good faith and seized property it believed it was entitled to.  For the reasons that follow, Defendants' Motion for Relief from Replevin under Rule 60(b) and Motion for an Order Holding Plaintiff in Contempt are **DENIED**.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On December 7, 2021, Polaris and Fain executed the Inventory Financing Agreement ("Fain IFA") which allowed Fain to purchase certain equipment and property for resale in Fain's motorcycle dealership business ("Collateral").[1]  That same day, Polaris and IMC also executed an Inventory Financing Agreement ("IMC IFA," and collectively with the Fain IFA, the "IFAs") to purchase certain equipment from Polaris-approved vendors for resale in Fain's business.[2]

On October 6, 2023, Polaris filed a replevin action against Defendants due to non-compliance with payments owed under the IFAs.[3]  Along with the Complaint, Polaris filed a Motion for a Hearing for a Writ of Replevin and corresponding Writ of Replevin.[4]

The Court granted Polaris' request for a hearing on the Writ of Replevin and held one on November 29, 2023.[5]  Defendant Mark Lillard, the owner and operator of both Fain and IMC, was in attendance.[6]

During the hearing, the parties agreed to stipulate to the issuance of the Writ of Replevin for the Collateral identified in Exhibits B and G to the Complaint.[7]

---

[1] Compl. ¶¶ 5-26, Trans. ID 71037565 (Oct. 6, 2023).
[2] *Id*.¶ 16.
[3] *Id*.
[4] Pl.'s Mot. for Hr'g and Writ of Replevin, Trans. ID 71037565 (Oct. 6, 2023).
[5] Order of Hr'g, Trans. ID 71361613 (Nov. 8, 2023).
[6] *Id*.
[7] Order Granting Issuance of Writ of Replevin, Trans. ID 71506095 (Nov. 29, 2023). *See* Compl.

Exhibits B and G listed a total of fifty-five (55) motorcycles identified by their vehicle identification numbers (VINs), as well as certain vehicle parts that were also identified by their invoice numbers, all of which were located on Fain and IMC dealership sites.[8]

At the conclusion of the hearing, the Court asked Polaris to draft an order for the stipulated replevin and have Defense Counsel[9] review (and approve) it before sending it to the Court.[10] Upon receipt of the draft stipulated order, the Court issued a Replevin Order substantively identical to the one submitted by Polaris and approved by Defendants.[11] The Replevin Order expressly states that the Collateral subject to the replevin is that identified in Exhibits B and G to the Complaint—the 55 motorcycles in which Polaris held a purchase money security interest.[12]

On December 1, 2023, in accordance with the Replevin Order, Defendants permitted Polaris onto their dealership sites to inspect the Collateral subject to the Replevin Order.[13] Three days later, Polaris replevined a significant portion of Defendants' property beyond the express scope of the Replevin Order, including

---

[8] Compl., Ex. B and G, Trans. ID 71037565 (Oct. 6, 2023).

[9] Defense Counsel at this point was Joseph Stanley, Esq.

[10] Transcript from Nov. 29, 2023 Hrg. 27:23-29:04, Trans. ID 71934759 (Feb. 2, 2024).

[11] Order Granting Issuance of Writ of Replevin.

[12] *Id.* ("[A] Writ of Replevin [will] be issued for all the Defendants' Collateral as defined in Exhibits B and G to the Complaint.").

[13] Defs.' Mot. for Relief from Replevin.

4

additional motorcycles, branded apparel, and garments worn by the dealership employees.[14]

On December 28, 2023, Defendants moved for Relief from the Replevin Order under Rule 60(b)[15] and for an Order Holding Plaintiff in Contempt based upon Polaris' abuse of the Replevin Order.[16]

In their Relief Motion, Defendants argue Polaris engaged in "fraudulent misconduct when it blatantly ignored the constraints of the Replevin Order *to which it stipulated* and proceeded to seize an additional seven hundred thousand dollars ($700,000) worth of property over and above that which was identified in the Replevin Order."[17]  Defendants maintain that the "fraudulent misconduct" exhibited by Polaris entitles them to relief from the Replevin Order.[18]  In their Contempt Motion, Defendants argue they are entitled to the return of all property not identified in the Replevin Order.[19]

Polaris admits in its Response that it erred when it seized property beyond the scope of the Replevin Order but points out it has since complied with the Court's direction by ceasing all sales of the erroneously seized property and working to

---

[14] *Id*. ¶ 4.
[15] *Id*.
[16] Defs.' Mot. for Contempt.
[17] Defs.' Mot. for Relief from Replevin ¶ 6 (emphasis in the original).
[18] *Id*.
[19] Defs.' Mot. for Contempt.  Defendants also request a fine of $5,000 for each day that the property is not delivered beyond a 7-day deadline. *Id*.

provide a complete inventory of the property taken from the Defendants' dealerships.[20] Further, Polaris argues that its error was in good faith, and it believed it was acting appropriately under the parties' agreements to collect the collateral[21] as defined in the IFAs.[22] Therefore, Polaris argues that the Defendants have not established a basis for the Court to find Polaris in contempt.[23]

## III.   DISCUSSION

There are two issues present: first, whether Rule 60(b) relieves Defendants of the Replevin Order; and second, whether Polaris should be held in contempt for its breach[24] of the Replevin Order.

A. <u>Defendants' Motion for Relief from Replevin Order under Rule 60(b)</u>

Defendants move for Relief from the Court's Replevin Order under Superior Court Civil Rule 60(b). Specifically, Defendants seek to obtain relief from the Replevin Order under Rule 60(b)(3) or, alternatively, 60(b)(1) or (6).[25] Pursuant to Rule 60(b), the Court may set aside an order previously entered for: "(1) mistake,

---

[20] Pl.'s Opp'n to Defs.' Mot. for Relief from Replevin.

[21] The Court notes that the definition of "collateral" in the IFAs is broader than what was specified in the Replevin Order issued by the Court. *See generally* Compl.

[22] *Id.* ¶ 1. Polaris also argues that Defendants are not prejudiced by Polaris' actions since they cannot sell the Collateral because they are a non-operating business whose licenses were permanently suspended. *Id.* The Court does not find this a compelling argument to ignore the confines of a court order and seize property beyond what was permitted.

[23] Pl.'s Opp'n to Defs.' Mot. for Contempt.

[24] The Court uses "breach" in this context in reference to Polaris' actions when it impermissibly seized property beyond the scope of the Replevin Order.

[25] Defs.' Mot. for Relief from Replevin; *see* Super. Ct. Civ. R. 60(b)(3), (1), (6).

inadvertence, surprise, or excusable neglect . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party . . . (6) or any other reason justifying relief."[26] The trial court's decision to set aside an order under Rule 60(b) is discretionary.[27] "Because of the significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[28] In determining whether to exercise discretion, the Court may consider equitable principles.[29]

### 1. Rule 60(b)(3): the Fraud Exception

To prevail under the fraud exception to Rule 60(b)(3), Defendants must "point to evidence or facts that would lead a reasonable mind to the conclusion that an adverse party improperly obtained a [] judgment."[30] This does not include "sinister suspicions" nor "dark imaginings."[31] The Court will only grant relief if Defendants prove fraud by clear and convincing evidence.[32]

---

[26] *State v. Salasky*, 2023 WL 8649369, at *2 (Del. Super. Dec. 14, 2023) (citing Super. Ct. Civ. R. 60).

[27] *SARN SD3, LLC v. Czechoslovak Group A.S.*, 2023 WL 3145917, at *4 (Del. Super. Apr. 27, 2023).

[28] *Epstein v. Matsushita Elec. Indus. Co., Ltd. (In re MCA, Inc. S'holder Litig.)*, 785 A.2d 625, 635 (Del. 2001).

[29] *SARN SD3, LLC*, 2023 WL 3145917, at *4.

[30] *Mullin v. Ascetta*, 2021 WL 5710899, at *4 (Del. Super. Dec. 2, 2021) (quoting *In re MCA, Inc.*, 774 A.2d 272, 280 (Del. Ch. 2000)) (internal quotations omitted).

[31] *Id.*; s*ee Smith v. Williams*, 2007 WL 2193748, at *1 (Del. Super. July 27, 2007) ("Thus 'fraud on the court' is typically confined to the more serious, but fortunately rare, cases involving a corruption of the judicial process itself, such as bribery of a judge or juror, improper influence exerted on the court by an attorney, or involvement of an attorney as an officer of the court in the perpetuation of fraud.").

[32] *Mullin*, 2021 WL 5710899, at *4.

In support of their Motion, Defendants argue that Polaris "engaged in fraudulent misconduct" when it ignored the scope of the Replevin Order that it stipulated to and broadsided the Defendants by proceeding to seize property that "was clearly not covered by either the Complaint or the stipulated Order."[33] Defendants contend that had they been aware of Polaris' "ulterior motive [] to enter the Fain and IMC dealerships under cover of the Replevin Order and ultimately seize any and all property it could reasonably label as 'collateral' without regard to the order's clear constraints, they never would have stipulated to the entry of [the Replevin] Order."[34] However, Defendants do not point to any specific "fraudulent misconduct" that induced them to enter into the stipulated Replevin Order. Defendants claim Polaris had an "ulterior motive" to abuse the Replevin Order at the time of stipulation but do not provide specific evidence to support this contention.[35] The evidentiary record is factually barren on this issue, making this interpretation of Polaris' intent mere speculation. Polaris' subsequent actions alone are insufficient to establish fraud by clear and convincing evidence.

Additionally, the fraud exception under Rule 60(b)(3) is narrowly construed.[36] This exception is typically confined to cases of fraud or misrepresentation that

---

[33] Defs.' Mot. for Relief from Replevin ¶ 6.
[34] *Id.* ¶ 7.
[35] *See generally* Defs.' Mot. for Relief from Replevin.
[36] *Smith & Loveless, Inc. v. JJID, Inc.*, 2016 WL 3929867, at *10 (Super. Ct. July 15, 2016) (citing *Smith v. Williams*, 2007 WL 2193748, at *4 (Del. Super. July 27, 2007)).

threaten "the integrity of the court and its ability to function impartially."[37] Stated otherwise, relief will be granted under Rule 60(b)(3) if the fraud, misrepresentation, or other misconduct impairs the judicial process.[38] The judicial process has not been impaired, and so the Court does not find Defendants have met their high burden of establishing fraud or misrepresentation under Rule 60(b)(3).

### 2. *Rule 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect*

Alternatively, Defendants argue that even if the Court finds that Polaris had a basis to exceed the Replevin Order, the Court should grant Defendants relief under Rule 60(b)(1) "mistake, inadvertence, surprise, or excusable neglect."[39] According to Defendants, if the Court finds merit in Polaris' argument that the IFAs entitled it to exceed the scope of the Replevin Order, there was "evidence of a misunderstanding between the parties as to the scope of the collateral."[40]

Polaris counters that Defendants have failed to demonstrate they had a valid defense to the replevin action because the IFAs grant Polaris a security interest in "all personal property."[41] Without a valid defense, Polaris argues, relief would not be appropriate.[42]

---

[37] *Id*. (quoting *Postorivo v. AG Paintball Holdings, Inc.*, 2008 WL 3876199, at *21 (Del. Ch. Aug. 20, 2008)) (internal quotations omitted).
[38] *Id*.
[39] Super. Ct. Civ. R. 60(b)(3).
[40] *Id*. ¶ 8.
[41] Pl.'s Opp'n. to Defs.' Mot. for Relief from Replevin.
[42] *Id*. (citing *Smith & Loveless, Inc. v. JJID, Inc.*, 2016 WL 3929867, at *1 (Del. Super. July 15, 2016).

The Replevin Order specifically references the Collateral.[43] Defendants would therefore need to provide an evidentiary basis that when stipulating to Polaris replevining the Collateral, there was "mistake, inadvertence, surprise, or excusable neglect," on their part. To be sure, Defendants were not expecting Polaris to overstep the confines of the Replevin Order. But, there is no evidence to suggest that Defendants were mistaken when they agreed with Polaris to enter into the Replevin Order *at the time of the stipulation*. Therefore, Defendants are unable to show relief should be granted under Rule 60(b)(1).

### 3. Rule 60(b)(6): Any Other Reason Justifying Relief

Defendants next assert relief should be granted under Rule 60(b)(6) for "any other reason justifying relief."[44] Under Rule 60(b)(6), a final order may be set aside for "any other reason justifying relief from the operation of the judgment."[45] Relief under Rule 60(b)(6) is an extraordinary remedy.[46] This requires a showing of "extraordinary circumstances."[47]

Here, there are no "extraordinary circumstances" that would warrant relief from the Replevin Order. Defendants and Polaris attended a hearing on the Writ of

---

[43] Order Granting Issuance of Writ of Replevin.
[44] Super. Ct. Civ. R. 60(b)(6).
[45] Super. Ct. Civ. R. 60(b)(1).
[46] *Shipley v. New Castle County*, 975 A.2d 764, 767 (Del. 2009).
[47] *Id*.

Replevin.[48]  Both parties indicated a stipulation could be reached.[49]  The parties discussed the parameters of the stipulation outside of the Court's hearing.[50]  The parties then returned, stating that they agreed to a stipulation to the Collateral.[51]  The Court asked Polaris to draft a Replevin Order—approved by the Defendants—that it incorporated in its Order.[52]  Defendants have not provided to the Court any "extraordinary circumstances" that would suggest to the Court its Replevin Order should be lifted.

Additionally, Polaris maintains that Defendants' Motion should be denied because Defendants have no interest in the property seized by Polaris.  The crux of this suit is *whether Polaris has an interest in Defendants' property* under the IFAs, and the Court has not yet reached the merits of Polaris' claims.  Defendants are able to raise any viable defenses they may have to Polaris' allegations as the suit continues.

For the foregoing reasons, the Court finds Defendants' Motion for Relief from Replevin Order under Rule 60(b) is **DENIED.**

B.  Defendants' Motion for an Order Holding Polaris in Contempt

---

[48] Order of Hr'g.

[49] Transcript from Nov. 29, 2023 Hrg. 20:08-23:18.

[50] *Id*. 24:09-25:10. The private discussion to stipulate between the parties occurred after extensive discussion about the Writ of Replevin with the Court during the hearing. *See generally Id*.

[51] *Id*. 25:11-27:22.

[52] *Id*. 28:08-29:11.

Defendants seek an order holding Plaintiff in contempt for its breach of the Replevin Order. The Court has the "inherent authority . . . to impose either civil or criminal sanctions for contempt."[53] The burden of proof rests with the movant who must demonstrate contempt of a court order by a preponderance of the evidence.[54] If the movant makes out a *prima facie* case for contempt, the burden then shifts to the non-moving party to show why it was unable to comply with the court order.[55] The Supreme Court has held that "[a] trial judge has broad discretion to impose sanctions for failure to abide by [court] orders" so long as the "decision to impose sanctions [] [is] just and reasonable."[56]

Polaris admits that it violated the Replevin Order but argues that its good faith actions afterward have neutralized any prejudice to Defendants.

The Court of Chancery has previously considered "good faith efforts to comply with [an] order or to remedy the consequences of non-compliance" when evaluating motions for contempt.[57] While Polaris clearly violated the Replevin Order by taking property beyond the scope of the Replevin Order from Defendants' dealerships, Polaris has complied with the Court's verbal orders in the January 26, 2024 hearing by providing the Court and Defendants with an updated inventory of

[53] *DiSabatino v. Salicete*, 671 A.2d 1344, 1348 (1996) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)).
[54] *TransPerfect Global, Inc. v. Pincus*, 278 A.3d 630, 644 (2022).
[55] *Id*. (internal citations and quotations omitted).
[56] *Gallagher v. Long*, 940 A.2d 945 (Del. 2007).
[57] *Aveta Inc. v. Bengoa*, 986 A.2d 116, 1181 (Del. 2009).

all seized property, admitting that it violated the Replevin Order, and immediately ceasing the sale of the property that it took.[58]

The remedy of civil contempt is meant to serve two purposes: "to coerce compliance with the order being violated, and to remedy injury suffered by other parties as a result of the contumacious behavior."[59] Neither of these purposes would be served by the Court granting contempt here.

While the Court understands Defendants' frustration at their property being taken, there has been no harm to Defendants because of the oral no-sell order issued by the Court and the inventory of seized property provided by Polaris. The outcome here would be quite different had Polaris not engaged in good faith actions to remedy its improper seizure. What saves Polaris from contempt is its immediate attempts to mitigate the potentially harmful effects of its conduct and that Defendants were ultimately not harmed. The Court does not find that a contempt order is appropriate here, and therefore, the Defendants' Motion for an Order Holding Plaintiff in Contempt is **DENIED.**

## IV. CONCLUSION

For the reasons stated above, the Court finds Defendants' Motion for Relief from the Replevin Order under Rule 60(b) and Motion for an Order Holding Plaintiff

---

[58] Pl.'s Opp'n to Defs.' Mot. for Contempt ¶ 1; Letter to Defense Counsel in Follow up to the Hearing This Morning, Trans. ID 71886511 (Jan. 26, 2024).
[59] *Delaware State Bar Ass'n v. Alexander*, 386 A.2d 652, 665 (Del. 1978).

in Contempt are **DENIED,** and, if it has not done so already, Polaris shall return the property that was impermissibly seized during the execution of the Replevin Order to Defendants within <u>10 days</u> of the issuance of this Order.

        **IT IS SO ORDERED.**


<u>      /s/ Jan R. Jurden     </u>
Jan R. Jurden, President Judge


cc: Prothonotary